UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BATON ROUGE

| | | |
|---|---|---|
| JOHN L. BREAUX, JR. | : | DOCKET NO. 3:11-204 |
| VS. | : | JUDGE TRIMBLE |
| STONEBRIDGE LIFE INSURANCE COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is "Stonebridge Life's Motion for Summary Judgment" (R. #15) wherein defendant, Stonebridge Life Insurance Company ("Stonebridge") moves for summary judgment in its favor, dismissing plaintiff's claims for life insurance benefits. Stonebridge maintains that no benefit is owed on the policy because the Certificate of Accidental Death Insurance contained an exclusion which is applicable to the facts of this case. For the following reasons, the motion will be granted dismissing plaintiff's claim for benefits.

## FACTUAL STATEMENT

On August 30, 2009, Robyn Stevens Breaux died. Stonebridge, issued a life insurance policy that was in effect when Mrs. Breaux died.[1] The coroner of Jackson County, Mississippi identified the cause of death as accidental as a result of hemorrhagic pulmonary congestion and atelectasis, due to respiratory depression and recent drug intake.[2]

The Death Certificate lists "RECENT DRUG INTAKE" as a contributing factor of the

---

[1] Defendant's exhibit A.

[2] Defendant's exhibit B (death certificate); Defendant's exhibit C (Autopsy Protocol).

probable cause of death.[3] The Medical Consultant obtained by Stonebridge determined that the prescribed hydrocodone was taken at five (5) times the therapeutic level and thus was not being taken as prescribed.[4] The morphine, which was not prescribed, was taken at three (3) times the therapeutic level.[5]

On July 14, 2010, plaintiff, John L. Breaux, Jr. made a claim for death benefits under the policy which Stonebridge denied due to an exclusion in the policy. In his Proof of Accidental Death, Mr. Breaux claims that his wife died as a result of an "intake of prescribed meds."[6] He identified two pharmacies used by Mrs. Breaux – Landry's Pharmacy in Gonzales, Louisiana and Back Bay Pharmacy in Biloxi, Mississippi.[7] Mrs. Breaux's prescription records contain no prescription for morphine other than one prescription from K-Mart pharmacy in 2003 for a single 100 mg. tablet of Kadian, a drug which is sustained release morphine.[8]

In response to the claim, Stonebridge investigated the claim and determined from the autopsy report conducted by the coroner's office in Jackson County, Mississippi that Mrs. Breaux's blood revealed the following drug levels:

| | |
|---|---|
| Morphine | 300 ng/ml |
| Hydrocodone | 1125.0 ng/ml |
| Hydromorphone | 10 ng/ml |

---

[3] Defendant's exhibit 1-E (R. #15-3).

[4] Defendant's exhibit 1-H.

[5] Id.

[6] Defendant's exhibit 1, Declaration of Laura Allen, ¶ 3.

[7] Id.

[8] Stonebridge's exhibit 2.

2

    Diazepan               1254 ng/ml
    Desmethyldiazepam  680 ng/ml
    Temazepam         110 ng/ml[9]

The Report of Death Investigation by the State Medical Examiner reflects that "Dr. Paul McGarry was requested to perform autopsy and the death is ruled drug related."[10] The report concluded that the cause of death was pulmonary atelectasis due to respiratory depression with the contributory factor being recent drug intake.[11] Stonebridge's toxicologist expert concluded that "it is within all reasonable scientific probability that Ms. Breaux's death is related to mixed drug intoxication of Diazepam, Hydrocodone and Morphine. However, the hydrocodone alone or morphine alone could have caused her death."[12]

Stonebridge denied the life insurance benefit because it determined that Mrs. Breaux's death was caused either by morphine that was not prescribed to her, or because the non-prescribed morphine was a contributing cause of her death. Mr. Breaux filed the instant lawsuit to recover the benefits allegedly due for his wife's accidental death.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the

---

[9] Id., ¶ 5, and exhibit 1-D attached thereto.

[10] Id., ¶ 6, and exhibit 1-E attached thereto.

[11] Id.

[12] Defendant's exhibit 5-B.

3

moving party is entitled to judgment as a matter of law."[13] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[14] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[15] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[16] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[17] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[18] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[19] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[20]

---

[13] Fed. R.Civ. P. 56(c).

[14] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[15] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[16] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[17] Anderson, 477 U.S. at 249.

[18] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[19] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[20] Anderson, 477 U.S. at 249-50.

## **LAW AND ANALYSIS**

In denying coverage for the life insurance benefits, Stonebridge relied on an exclusion which provides that "No benefit shall be paid for injury that : . . . occurs while the Covered Person is taking or using any narcotic or barbiturate unless taken or used as prescribed by a physician."[21] Stonebridge relies on the expert report of toxicologist Dr. Gary Wimbish. Dr. Wimbish concluded that Mrs. Breaux's death was related to mixed drug intoxication of Diazepam, Hydrocodone and Morphine, and that either the morphine alone or the hydrocodone alone could have caused Mrs. Breaux's death.[22]

Plaintiff maintains that Stonebridge cannot meet its burden of proof as to the applicability of the exclusion. Plaintiff relies on Davis v. Peoples Benefit Life Ins. Co.,[23] wherein the court held that an accidental death insurance policy that has language that operates to exclude coverage for an insured's death because it was caused by or contributed to by pain medications ingested by the insured in non-therapeutic doses, even though the drugs were administered on the advice of a physician, did not preclude coverage following the insured's death.[24] Plaintiff argues that the only way the exclusion would apply was if a physician did not prescribe the lethal substance.

As noted by Stonebridge, a contributing factor of Mrs. Breaux's death was the lethal amount of morphine not prescribed by a physician. Plaintiff urges the court to find that there is a genuine issue of material fact as to the morphine because of the one prescribed morphine tablet, and/or that

---

[21] Defendant's exhibit 1-A, p. 4.
[22] Defendant's exhibit 5-B.
[23] 47 So.3d 1033 (La.App. 1st Cir. 2010).
[24] Citing La. R.S. 22:975(B)(10).

5

Mrs. Breaux was prescribed promethazine with codeine.[25] Plaintiff suggests that codeine metabolizes into morphine relying on an article posted in News Path[26] on the website for the College of American Pathologists.[27] Plaintiff complains that Dr. Wimbish fails to consider this phenomenon.

The concentration of morphine found in Ms. Breaux's blood was 300 ng/mL; blood concentrations of morphine associated with fatalities is 200 ng/mL or greater.[28] Stonebridge submits that the one tablet of timed release Kadian prescribed in 2003 could not possibly generate the level of morphine found in Mrs. Breaux's blood at her death. Dr. Wimbish reported that "[t]his dose of Kadian will produce a blood morphine concentration of only about 25 ng/mL during the day of administration."[29] Plaintiff submits no summary judgment evidence to refute this. Thus, this one tablet, even if taken over 6 years after it was prescribed, is insufficient to explain the high level of morphine found in Ms. Breaux's blood upon her death.

Next, plaintiff argues that based on an internet article, it is possible that the codeine Mrs. Breaux was prescribed could have been a source of the morphine. Mr. Wimbish reports that literature shows that morphine at 200 ng/mL, as a metabolite of codeine, requires that codeine also

---

[25] Plaintiff also argues based on its late filed expert report of Dr. George, that Mrs. Breaux's history of pain medication use make her tolerant to said drugs. Thus, plaintiff suggests that the level of Morphine in her blood was not lethal. While we note plaintiff's argument, because of our final findings regarding the late filed expert report and our contributing factor analysis, we need not address it here.

[26] The court does not consider this article as proper summary judgment evidence without supporting expert testimony or opinion.

[27] Plaintiff's exhibit I.

[28] Defendant's exhibit 5-B

[29] Defendant's exhibit 5-B.

be present at about 2,800 ns/mL.[30] However, Mrs. Breaux's blood which was collected at autopsy revealed no codeine. Again, plaintiff has failed to submit summary judgment evidence to refute this.

Stonebridge complains that the expert report of Dr. William J. George[31] used by plaintiff in an attempt to create a genuine issue of fact is untimely and should not be permitted.[32] In accordance with the Rule 26(f) Report, the parties agreed that plaintiff would submit his expert report on January 16, 2012 and defendant would submit its report on February 15, 2012. Plaintiff failed to submit an expert report on January 16, 2012 and defendant submitted its report on February 15, 2012. Defendant filed its motion for summary judgment on March 14, 2012. When plaintiff filed his opposition to the motion on April 1, 2012, he produced the expert report of Dr. George; the report is dated as being submitted on March 30, 2012.[33] Defendant remarks that it has not had the opportunity to depose Dr. George and thus the court should not consider his report.

Plaintiff has provided this court with no explanation as to his noncompliance of the deadlines for expert reports that the parties agreed on in the Rule 26(f) report. The court finds that

---

[30] Id.

[31] Dr. George opined that "more likely than not, the combination of morphine, diazepam and hydrocodone, at the levels reported to be present in Ms. Breaux, would represent a likely cause of her death. Morphine, alone at the level reported for Ms. Breaux, would be lower than 50% of the lethal level in opiate tolerant individuals and as such would not be a likely cause of her death. Diazepam alone at the levels reported to be present in blood obtained from Ms. Breaux would not have caused her death." Plaintiff's exhibit K, R. #8-11.

[32] See Barret v. Atlantic Richfield Co., 95 F.3d 375, 380-82 (5th Cir. 1996)(district court order striking the testimony of plaintiffs' expert for the unjustified failure to comply with the court's scheduling order upheld); see also Atkins v. Ferro Corp., 2007 WL 4722675, *2 (M.D.La. 2007)(striking report and testimony of plaintiff's expert where plaintiff failed to comply with deadline for filing its expert report without explanation).

[33] Plaintiff's exhibit K, R. #18-11.

the expert report is untimely and will not consider the report. Furthermore, the court will strike the expert report of Dr. George from the record.

It is undisputed that the large amount of Morphine was a contributing factor in Mrs. Breaux's death. Even if we considered Dr. George's expert opinion, he also concluded that the combined effects of hydrocodone, diazepam and morphine at the levels reported for Ms. Breaux, would be a likely cause of her death.[34] Plaintiff has failed to submit summary judgment evidence to refute this fact. The amount of morphine in Mrs. Breaux's blood collected at autopsy was not on the advice of a physician. This case can be distinguished from the _Davis_ case[35] which involved a death caused by lethal amounts of prescribed medications. Mrs. Breaux had 300 ng/ml of morphine in her blood, a non-prescribed medication which contributed to the cause of her death. As such, the policy exclusion is applicable and summary judgment will be granted in favor of Stonebridge.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted dismissing with prejudice plaintiff's claims against defendant.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 7th day of May, 2012.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[34] Plaintiff's exhibit K, Opinions of Dr. William George. R. #18-11.

[35] The undersigned is not at this time condoning the court's holding in _Davis_ as it relates to Louisiana Revised Statute 22:975(B)(10).

8